# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BRYCE A. WISEMAN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:18-cv-13
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Bryce A. Wiseman ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply Memorandum (ECF No. 16), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed his application for Title II Social Security Disability Benefits on July 17, 2013, alleging that he had been disabled since September 1, 2006. (R. 256.) Plaintiff later amended his disability onset date to April 16, 2013. (*Id.* at 307.) On October 20, 2016, following initial administrative denials of Plaintiff's application, a hearing was held before Administrative Law Judge Jeffrey Hartranft (the "ALJ"). (*Id.* at 85–137.)

A.  **Hearing Testimony**

Plaintiff, represented by counsel, appeared and testified at the hearing. He testified that he had not worked since 2004, and that his previous work included working as a night manager, limo driver, security guard, material handler, filter builder, glue gun operator, and hand sander. (R. 97–105.) Plaintiff also described pain from "arthritis in every joint in my body" and difficulties due to heart disease. (*Id.* at 106–07.) Plaintiff has had five stents placed in his kidneys and two in his heart. (*Id.* at 107.) He testified that he has difficulty walking more than 20 feet and often has to sit down to rest due to abnormal heart rhythms. (*Id.* at 107, 110.) Plaintiff also stated he has difficulty walking due to insufficient blood flow to his feet. (*Id.* at 112.) Plaintiff was born without a rectum and has had life-long digestive problems as a result. (*Id.* at 121.) Finally, Plaintiff testified that he takes Xanax daily for anxiety and takes extra doses when he has panic attacks. (*Id.* at 125.)

Vocational Expert, Carl Hartung (the "VE"), also testified. (R. 130–35.) The VE classified Plaintiff's past relevant work as security guard (categorized as semi-skilled, light work), stores laborer (medium work), filter assembler (light work), and hand sander (light work). (*Id.* at 130–31.) The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[1] to the VE, which limited Plaintiff to light work. (*Id.* at 132.) The VE testified that, assuming the limitations of the ALJ's hypothetical, Plaintiff could return to his previous work only as a hand sander. (*Id.* at 132.) However, the ALJ's hypothetical required avoidance of exposure to pulmonary irritants, including dust. (*Id.* at 131.) The ALJ posited that the hand sander position would require exposure to dust, which Plaintiff confirmed. (*Id.* at 132.) The VE

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

further testified that, assuming the limitations of the ALJ's hypothetical, Plaintiff would be able to work as a router, marker, or labeler. (*Id.* at 133.)

When asked to alter the hypothetical so that Plaintiff would be limited to sedentary work, the VE testified that Plaintiff would not be able to return to any of his past work, but that he would be capable of working as an addresser, document preparer, or spotter. (R. 134.) Plaintiff's counsel argued that if Plaintiff's RFC is limited to sedentary work, Plaintiff would "grid out" as of the date that Plaintiff changes age categories to "closely approaching advanced age" (that is, as of October 17, 2013, when Plaintiff turned 50 years old). (*Id.* at 135; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 2.00, 201.00(g), 201.14.)

**B.     Medical Opinions**

Two state agency reviewing physicians assessed Plaintiff's limitations based on file reviews dated March 6, 2014, and June 19, 2014, respectively. Dr. Gary Hinzman, M.D., and Dr. Lynne Torello, M.D., both found that Plaintiff could occasionally lift or carry 20 pounds; could frequently lift or carry 10 pounds; could stand, walk, or sit for six hours of an eight-hour work day; had no limitations on pushing or pulling; and could frequently climb, balance, stoop, kneel, crouch, and crawl. (R. 149–50, 166–67.)

Dr. Mark Weaver, M.D., an examiner for the Social Security Administration, opined following an examination on February 24, 2014, that Plaintiff was limited in sitting, standing, walking, bending, twisting, lifting, and carrying, but did not articulate the severity of these limitations. (R. 430–34.) Dr. Weaver also observed that Plaintiff became slightly short of breath after walking 40 feet. (*Id.*)

Dr. Jeffrey Haggenjos, M.D., Plaintiff's treating physician, issued a medical source statement dated February 24, 2016. (R. 797–800.) Dr. Haggenjos opined that Plaintiff could sit for no more than 10–15 minutes at a time; could stand for no more than five minutes at a time;

3

stand or walk no more than two hours in an eight-hour work day; required the opportunity to alternate positions; would need unscheduled breaks lasting 15 minutes; would need to elevate his legs for 10% of the day; would be off-task over 25% of the work day; and was likely to miss four or more days of work per month. (*Id.*) Dr. Haggenjos further concluded that Plaintiff is "unable to work." (R. 316.)

Finally, Dr. Shelly Dunmeyer, M.D., an examiner for the Ohio Department of Jobs and Family Services ("ODJFS"), conducted a consultative examination on August 24, 2016. (R. 975–80.) Dr. Dunmeyer concluded that Plaintiff requires moderate limitations in standing, walking, pushing, pulling, and bending; and that Plaintiff could occasionally lift no more than 10 pounds. (*Id.*)

**C.   The ALJ's Decision**

On February 17, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 11–23.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

during the period from his alleged onset date of July 17, 2013. (*Id.* at 13.) The ALJ found at step two that Plaintiff had the severe impairments of coronary artery disease; heart attack; peripheral vascular disease; degenerative disc disease of the spine; arthritis of the right wrist; chronic obstructive pulmonary disease (COPD); a history of birth defects; anxiety-related and affective disorders; and polysubstance abuse. (*Id.* at 13.)

The ALJ concluded at step three that Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16.) Specifically, the ALJ considered and rejected Listings 1.02 (major dysfunction of a joint), 3.02 (chronic respiratory disorders), 3.03 (asthma), 4.00 (cardiovascular impairments), 4.12 (peripheral arterial disease), 12.04 (affective, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 14–16.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps, stairs, ladders, ropes, and scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; can frequently handle and finger with the right hand; and must avoid exposure to extreme heat, cold, and concentrated pulmonary irritants such as fumes, odors, dust, and gases. Mentally, the claimant can perform simple, routine, and repetitive tasks involving only simple work-related decisions and with few, if any, workplace changes; no strict production quotas or fast-paced work, such as on an assembly line; and can have occasional interaction with the general public, co-workers, and supervisors.

(R. 16.) In arriving at Plaintiff's RFC, the ALJ gave "significant weight" to the State agency medical examiners' opinions due to "their program familiarity, longitudinal view of the medical evidence of record, and their opinions['] consisten[cy] with the evidence." (*Id.* at 20.) He gave

"little weight" to Dr. Haggenjos's opinion because "it is not supported by his treatment notes or other evidence of record." (*Id.* at 20.) The ALJ also assigned "partial weight" to the opinion of Dr. Weaver "to the extent it supports a light [RFC]," because "he examined the claimant on a one-on-one basis, had the opportunity to personally interview, observe, and objectively evaluate the claimant, and his opinion is generally consistent with the medical evidence of record; however, he did not provide sufficiently specific limitations and used indefinite words such as 'probably.'" (*Id.*) Finally, the ALJ gave Dr. Dunmeyer's opinion "little weight," reasoning that "it is internally inconsistent and relies on the claimant's subjective allegations of pain." (*Id.* at 21.)

Relying on the VE's testimony, the ALJ determined that Plaintiff could perform his past relevant work as a hand sander "as generally performed," although not "as actually performed" by Plaintiff in the past, which involved exposure to dust. (R. 22.) Alternatively, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. He therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 23).

## II.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## III. ANALYSIS

Plaintiff raises a single issue in his Statement of Errors (ECF No. 10): that the ALJ failed to properly evaluate the opinion evidence of record and as a result failed to include necessary limitations in Plaintiff's RFC. (Pl.'s Statement of Errors 6, ECF No. 10.) Specifically, Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Haggenjos and Dr. Dunmeyer, who concluded that Plaintiff should be limited to the equivalent of sedentary work.

### A. Dr. Haggenjos, Plaintiff's Treating Physician

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion, like that of Dr. Haggenjos, is submitted, the ALJ generally gives deference to it "since these sources are likely to

7

be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d

Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec*., 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ explained he afford Dr. Haggenjos's opinion "little weight" because his recommended limitations are not supported by his treatment notes or other evidence of record:

> Although he gave the claimant very severe physical limitations, indicating that the claimant can only stand for up to five minutes at one time and sit for 10 to 15 minutes at one time, he only provided the claimant with very conservative medical management of his impairments (Exhibit 14F, p. 2). While he noted that he claimant would need to elevate his legs 10 percent of the day, there is little to no evidence in the record of significant and ongoing lower extremity edema (Exhibit 14F, p. 3). Dr. Haggenjos noted that the claimant would have severe limitations in his bilateral upper extremities despite there only being evidence of mild arthritis in the claimant's right wrist only (Exhibit 14F, p. 3 and 17F, p. 26). Lastly, there is no basis for his opinion that the claimant would be absent from work more than four days per month, especially considering the fact that claimant has reported a significant decrease in his pain with medication, he has had little cardiac

symptomatology outside of acute events, and he has reported only intermittent peripheral vascular disease issues, as discussed above (Exhibit 14F, p. 4).

(R. 20.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Haggenjos's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight on the grounds it was unsupported by objective evidence. Plaintiff's Statement of Errors and Reply do not contest the specific inconsistencies the ALJ identifies; rather, Plaintiff merely points out other aspects of the record that support his impairments. *E.g.*, cardiology records indicate problems with severe bilateral lower extremity claudication (although the same office note states Plaintiff "is right now feeling much better after intervention, no longer has the exertional cramps and claudication that he had previously") (R. 330); his history of heart attacks and multiple stent placement are consistent with fatigue and shortness of breath (*Id.* at 432); and Plaintiff has received consistent treatment for back pain and degenerative disc disease. (*Id.* at 766, 770, 774, 785.)

But the existence of evidence in Plaintiff's favor does not mean that the ALJ's decision to discount Dr. Haggenjos's opinion was not supported by substantial evidence. "This is the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-CV-01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Haggenjos's opinion.

**B.     Dr. Dunmeyer, ODJFS Examiner**

As to Dr. Dunmeyer, because she is *not* a treating source for Plaintiff, her opinion is afforded no special status.[3] But regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii).[4]

---

[3] Plaintiff asserts that because the ODJFS, at whose request Dr. Dunmeyer performed her assessment, uses the Social Security Administration's framework for determining disability, Dr. Dunmeyer's opinion should be given "significant weight." (Pl.'s Statement of Errors 10, ECF No. 10.) But Plaintiff provides no authority for this assertion and the undersigned will evaluate the ALJ's treatment of Dr. Dunmeyer's opinion in accordance with the relevant Social Security regulations.

[4] This regulation was amended effective March 27, 2017. Because the ALJ issued his decision on February 17, 2017, the prior version applies to this case. The undersigned quotes from the version in effect at the time of the ALJ's decision.

The ALJ considered Dr. Dunmeyer's opinion, which essentially limited Plaintiff to sedentary work, but gave it little weight because "it is internally inconsistent and relies on the claimant's subjective allegations of pain." (R. 21.) The ALJ explained:

> While her examination was relatively unremarkable, with only peripheral pulse findings and decreased range of motion of the back, she assessed severe limitations consistent with sedentary work (Exhibit 20F, pp. 3–4). Additionally, much of her opinion appears to be based on the claimant's subjective complaints, some of which he has not received treatment for nor mentioned to his treating physicians (Exhibit 20F, p. 5). For example, the claimant has not reported having any significant ankle pain or digestive issues leading to diarrhea and fatigue, all of which contributed to her opinion that he is limited to sedentary work (Exhibit 20F, p. 5).

(*Id.*)

Again, the undersigned finds no error with the ALJ's consideration and weighing of Dr. Dunmeyer's opinion. The majority of Dr. Dunmeyer's physical examination indicated no abnormal findings, other than the peripheral pulse findings and decreased range of motion of the back noted by the ALJ. (R. 975–80.) At best, it appears that Dr. Dunmeyer relied on Plaintiff's subjective reports and complaints in recommending severe limitations. *Cf. Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, [the claimant's] treating physician, was not entitled to deference because it was based on [the claimant's] subjective complaints, rather than objective medical data.").

And again, Plaintiff does not disagree with the inconsistencies noted by the ALJ, but merely points to the same evidence in support of his impairments noted *supra*. As the undersigned has already stated, this does not require a finding that the ALJ's decision was not supported by substantial evidence. The undersigned concludes that the ALJ did not err in his consideration and weighing of Dr. Dunmeyer's opinion.

## IV. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE